UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LEIGH ANN GREENMAN,
          Plaintiff

      v.                                 C.A. No. 15-004-ML

METROPOLITAN PROPERTY AND CASUALTY
INSURANCE COMPANY,
          Defendant

**ORDER AND MEMORANDUM**

This matter is before the Court on review of a Report and Recommendation ("R&R") issued by Magistrate Judge Sullivan on March 22, 2017 (ECF No. 39). Because the Plaintiff filed a timely objection to the R&R, the Court reviews *de novo* those portions of the R&R to which an objection has been made. See Fed. R. Civ. P. 72(b). The Court has thoroughly reviewed and considered the R&R, the Plaintiff's objection thereto (ECF No. 41), and the Defendant's response (ECF No. 43), as well as the submissions by the parties in connection with the Defendant's motion for summary judgment (ECF Nos. 20-23, 33-35, 37-38). Having done so, the Court now adopts the R&R in its entirety. Accordingly, the Defendant's motion for summary judgment is GRANTED.

**I. Factual Background**

Metropolitan Property and Casualty Insurance Company ("MetLife"), a Rhode Island corporation, operates as a personal lines property and casualty insurer. Def.'s Statement of Undisputed

1

Facts ("SUF") ¶¶ 1, 2. MetLife sells and services auto and homeowner insurance and other miscellaneous personal lines of insurance. SUF ¶ 3. During the time period in question, MetLife employed approximately 360 people at its Quaker Lane, Warwick, Rhode Island office, including a 15-employee Product Marketing group, which was under the supervision of Robert Lundgren ("Lundgren"), Vice President of Marketing, and John Delemontex ("Delemontex") Director of Product Marketing. SUF ¶¶ 4-7. Within the Product Marketing group are (in the order of increasing seniority) the following positions: Marketing Analyst, Marketing Consultant 1, Marketing Consultant II, Senior Marketing Consultant, and Senior Marketing Consultant II.[1] SUF ¶ 11. The entry level position of Marketing Analyst requires 0-2 years of experience and falls under the supervision of more senior employees, such as the Marketing Consultants. SUF ¶ 12. Marketing Consultants generally have between 2-5 years of experience at the low end and 5-7 years of experience at the more advanced level. Senior Marketing consultants and Senior Marketing Consultants II have 7-8 or more than 8 years of experience, respectively. They are also expected to work more independently on project-based tasks without ongoing

---

[1] Although Plaintiff does not disagree with this list, she notes that the group also includes the position of administrative assistant held by two temporary employees and unspecified positions held by independent contractors. Pltf.'s Statement of Disputed Facts ("SDF") ¶ 11.

2

close supervision. SUF ¶¶13, 14. According to Plaintiff, she was considered a Marketing Analyst but had more than two years of experience, provided her time as a temporary employee were included. She also maintains that she was able to work on projects without supervision. SDF ¶ 12.

In early 2012, Lundgren was informed by MetLife of the need to cut his budget by 8%, or $800,000, as part of an expense reduction plan, which itself was part of a larger corporate reorganization. SUF ¶¶ 15, 16, 18. According to MetLife, Lundgren took into account the company's changing shift in focus from retail sales to the growth in group sales.[2] SUF ¶ 20. Lundgren's decision as to which programs and personnel to cut were made in consultation with Delemontex. SUF ¶ 19.

According to MetLife, Lundgren decided to eliminate the position of Marketing Consultant David Cleveland ("Cleveland") and that of the sole Marketing Analyst, the Plaintiff.[3] SUF ¶¶ 24, 25. MetLife maintains that Lundgren based his decision to terminate

---

[2] Plaintiff's contention that "[t]o the extent Ms. [sic] Lundgren selected Ms. Greenman for termination based on her pregnancy and FMLA leave, he did not take into account a shift in the business emphasis," assumes Plaintiff's desired conclusion as fact, but does not factually dispute the stated factor considered by Lundgren in determining how to achieve the required deduction. SDF ¶ 21.

[3] Lundgren also decided to lay off Ron Mann ("Mann"), one of the individuals in the research department who was focused primarily on data analysis supporting retail sales. SUF ¶ 31.

these positions on what would have the least negative impact on the Product Marketing Group, SUF ¶ 23. Plaintiff, however, insists that her position was cut because she was pregnant and planning to take FMLA leave. SDF ¶ 23. Plaintiff agrees, however, that the decision to eliminate her position was made because she had less experience in marketing relative to the other members of the Product Marketing Group under Delemontex. She also acknowledges that in addition to the two positions within Delemontex's area, Lundgren decided to cut one of the two individuals in the research area who was focused primarily on data analysis supporting retail sales. SUF ¶¶ 29-31.

On the Friday prior to the planned layoffs, which were scheduled to take effect on Monday, May 21, 2012, Kerri Gulesserian ("Gulesserian"), who had previously assumed temporary supervisory responsibilities in the Product Marketing group while Delemontex was rotated to a sales assignment, SUF ¶7 n. 2, informed Delemontex that Plaintiff's spouse was about to be laid off from his position as a contractor for MetLife. SUF ¶¶ 32, 33. Delemontex relayed the information to human resource employee Deb Duchala ("Duchala") and also left a voice mail for Lundgren ¶¶ 34, 35. Concerned about the effect of the loss of income to both Plaintiff and her spouse at the same time, Lundgren decided to delay Plaintiff's layoff. As a result, only Cleveland and Mann were laid off on May 21, 2012. SUF ¶¶ 37-39.

Plaintiff calls these asserted facts into question because (1)

4

she herself had not informed Gulesserian about her husband's possible layoff; (2) Duchala only learned about Plaintiff's pregnancy on the Friday prior to the planned layoff date; (3) Lundgren learned the news from Ms. Ridley; and (4) "MetLife's stated policy does not allow for the effect of termination to be factored into the termination decision." SDF ¶¶ 33-37, Pltf's Statement of Undisputed Facts ¶ 183. Plaintiff does not dispute, however, that Lundgren learned about her husband's layoff[4] and that Lundgren decided not to lay off Plaintiff as planned. Id.

On October 9, 2012[5], Plaintiff began her maternity leave. SDF ¶ 41. According to MetLife, it provided Plaintiff with appropriate notice of the workplace leave that was available to her, SUF ¶ 42; Plaintiff disagrees on the grounds that because she was terminated in the course of her leave, the notice "was not actually notice of 'leave that was available to Plaintiff.'" SDF ¶ 42. It is undisputed that Plaintiff initially received paid leave and that her leave became unpaid as of December 21, 2013. SUF ¶ 44. Likewise, it is undisputed that Plaintiff's twelve weeks of FMLA leave was originally scheduled to conclude during the first week of

---

[4] As it turned out, Plaintiff's husband was actually not scheduled to be laid off at that time.

[5] According to MetLife, Plaintiff's maternity leave commenced on October 5, 2012; the apparent discrepancy is explained by the fact that it was the Columbus Day weekend. SUF ¶41.

5

January 2013, and that during the course of Plaintiff's leave, Lundgren became aware that an enhanced severance program provided by Metlife would only be available for employees who were laid off during 2012. SUF ¶¶ 45, 46. Lundgren sought to determine whether making the layoff date in 2012, rather than 2013, would be financially advantageous to Plaintiff. Although Plaintiff asserts that Lundgren also considered whether the earlier date would benefit MetLife by getting Plaintiff "off the books," SDF ¶ 47, she does not refute that Lundgren sought to make such a determination or that the earlier layoff date would have been financially advantageous to her, when compared with a 2013 layoff date.[6] Id. Based on an analysis provided by Duchala, Lundgren determined that the additional severance benefit available in 2012 would yield a significantly better financial outcome for Plaintiff. SUF ¶48. Plaintiff was laid off as of December 26, 2012, which rendered her eligible to receive additional severance.[7] SUF ¶ 49.

---

[6] According to MetLife, the December 21, 2012 lay-off date increased Plaintiff's severance offer significantly. Def.'s Resp. to R&R at 7 n.6 (ECF No. 43).

[7] As Plaintiff continues to point out in her responses to MetLife's motion, it would have been more advantageous to her, had her position not been eliminated at all. SDF ¶¶ 47-49, 70-72. However, neither that assertion nor her general conclusory statement that MetLife terminated her employment to "rid itself of a pregnant woman who had taken FMLA leave" refutes Metlife's representation that the layoff was first delayed and then accelerated to a date that would provide Plaintiff with additional benefits that neither the May 2012 date nor the January 2013 date

6

Subsequently, Plaintiff reported to the Rhode Island Department of Labor and Training that her job had been eliminated. SUF ¶ 50. Plaintiff, who does not dispute this assertion, suggests that she was replaced with temporary employees after her departure. SDF ¶ 50.

It is undisputed that Gulesserian, who had taken maternity leave twice while at MetLife, was not laid off during the Product Marketing group budget reduction. Two other female employees who also had taken maternity leave while they were members of the Product Marketing group were all subsequently reinstated and/or promoted. SUF ¶¶ 68, 69.

**II. Procedural History**

On December 16, 2014, the Plaintiff filed a three-count complaint (the "Complaint") in Rhode Island state court, asserting (Count I) Rhode Island Civil Rights Act Discrimination, (Count II) Family Medical Leave Act Retaliation, and (Count III) Family Medical Leave Act Interference (ECF No. 1). After removing the Complaint to this Court, MetLife filed an answer on January 13, 2015, generally denying Plaintiff's claims and raising a number of affirmative defenses (ECF No. 2).

Following a lengthy and, at times, contentious discovery period, MetLife filed a motion for summary judgment on August 26,

---

would have afforded her.

2016 (ECF No. 20). On December 8, 2016, the Plaintiff filed a response in opposition to MetLife's motion (ECF No. 33), to which MetLife filed a reply on January 9, 2017 (ECF No. 37). In addition, MetLife filed a motion to have portions of its Rule 56 SUF deemed admitted and to strike Plaintiff's SUF (ECF 38).

On March 22, 2017, following a hearing, the Magistrate Judge issued a detailed 29-page R&R, in which she recommended that MetLife's motion for summary judgment be granted "[be]cause Plaintiff has presented no competent evidence that would permit a reasonable fact finder to conclude that [MetLife's] decision to select her for lay-off was concocted to mask the improper goal of getting rid of a pregnant worker or a worker entitled to FMLA leave or that [MetLife] wrongly interfered with her right to an FMLA leave." R&R at 29 (ECF No. 39).

The Plaintiff filed a timely objection to the R&R on April 4, 2017 (ECF No. 41), to which MetLife filed a reply memorandum on May 5, 2017 (ECF 43).

### III. Standard of Review

The Court, in considering a motion for summary judgment, reviews the record "in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." Merchants Ins. Co. of New Hampshire, Inc. v. U.S. Fidelity and Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998)(citing Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997)).

MetLife, as the party seeking summary judgment, bears the burden of establishing the lack of a genuine issue of material fact. Merchants Ins. Co. of New Hampshire, Inc. v. U.S. Fidelity and Guar. Co., 143 F.3d at 7. "Once such a showing is made, 'the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor.'" Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir.2010)).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citations omitted). "A fact is material if it has the potential of determining the outcome of the litigation." Id. (quoting Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

**IV. Discussion**

**A. The Discrimination Claim**

In her Complaint, Plaintiff alleges that her employment by MetLife was terminated "due to her gender and pregnancy" and "with

9

the intention of retaliating against [Plaintiff] for making plans to take maternity leave and for taking maternity leave protected by the FMLA." Complaint ¶¶ 27, 34. Plaintiff further asserts that "[b]y terminating [Plaintiff] without justification, Defendants [sic] avoided their responsibilities under the FMLA, causing [Plaintiff] damages." Id. at ¶ 38.

In response, MetLife submits that Plaintiff's entry level position was eliminated as part of an overall plan to reduce expenses. Def.'s Mot. Sum. Judg. 1 (ECF No. 21). According to MetLife, Plaintiff was the most junior employee in her workgroup. The decision to eliminate Plaintiff's position and lay her off was made because she had less experience in marketing than the other members in her group, a contention that Plaintiff does not dispute. SUF ¶ 29, SDF ¶ 29. MetLife also points out that two of the three employees affected by the budgetary reduction were male, neither of whom had taken any parental leave, and that other individuals in Plaintiff's work group—who had taken maternity leave before—were not laid off.

To prove her claim that Plaintiff's employment was terminated by MetLife on the basis of her pregnancy and/or because she is a woman, Plaintiff has the burden of establishing that MetLife purposefully laid her off because of those reasons. Smith v. F.W.

Morse & Co., Inc., 76 F.3d 413, 420 (1st Cir.1996)[8]. To undertake its analysis, the Court must apply the familiar McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Because Plaintiff has made no showing of the equivalent of a "smoking gun" in this case, Plaintiff has the initial burden of establishing a *prima facie* case. Center for Behavioral Health, Rhode Island v. Barros, 710 A.2d 680, 685 (R.I. 1998). To prove that MetLife's termination of Plaintiff's employment constituted discrimination based on her pregnancy, Plaintiff has to show that "(1) she was pregnant at the relevant time, (2) her job performance was satisfactory, but (3) her employer took some adverse employment action against her while (4) treating non-pregnant employees differently." Sanchez-Estrada v. MAPFRE Praico Ins. Co., 126 F.Supp.3d 220, 232 (D.P.R. 2015). Because the Plaintiff's employment was terminated during a layoff phase, she may establish a *prima facie* discrimination case by "producing some evidence that [her] layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination." Dunn v. Trustees

---

[8] Although Plaintiff's case was brought under the Rhode Island Civil Rights Act ("RICRA"), it is well established that RICRA provisions are construed under the guidance of federal courts construing Title VII of the Civil Rights Act of 1964. See Newport Shipyard, Inc. v. Rhode Island Com'n for Human Rights, 484 A.2d 893, 897-98 (R.I. 1984).

of Boston University, 761 F.3d 63, 68 (1st. Cir.2014).

If the Plaintiff can satisfy the *prima face* requirement, it creates a "rebuttable presumption that discrimination prompted the challenged adverse employment action." Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 12 (1st Cir. 2011).

The burden then shifts to MetLife to rebut the presumption by showing that it had "legitimate, non-discriminatory" reasons for its actions. Young v. United Parcel Service, Inc., — U.S. —, 135 S. Ct. 1338, 1354, 191 L.Ed.2d 279 (2015). If MetLife is successful in rebutting the presumption, the burden shifts back to the Plaintiff to make a showing that MetLife's proffered reasons were in fact "pretextual." Id. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)(Plaintiff "now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision."). To persuade the Court that she has been the victim of intentional discrimination, the Plaintiff must prove directly that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id.

In a thoroughly detailed, precisely analyzed, and thoughtfully considered R&R, the Magistrate Judge concluded that "the record is devoid of facts supporting inferences sufficient for a fact finder to conclude that Plaintiff's pregnancy was the reason she was

selected to be laid off." R&R at 26. As to Plaintiff's retaliation claim, the Magistrate Judge noted that MetLife "manipulated the timing of the lay-off so [Plaintiff] ended up getting almost all of the FMLA leave (including all of the fully paid parental leave)," and she further determined that Plaintiff failed to present evidence that MetLife's stated reason for Plaintiff's selection to be laid off was pretextual. Id. at 28.

The Plaintiff, in her 41-page objection to the R&R, maintains, *inter alia*, that her employment was terminated because she was pregnant and/or female and that MetLife's articulated reason for the termination was a pretext. Pltf.'s Obj. at 17-22 (ECF No. 41-1). With respect to the latter, Plaintiff suggests that if MetLife had elected to terminate the most junior employee in the Lundgren group, it would have terminated Diane Lange (an administrative assistant who provided administrative support to several individuals in the department) or one of the temporary workers. Id. at 30-31. Plaintiff's suggestion that MetLife's stated reduction-in-force-justification was pretextual is based on Plaintiff's belief that, after Plaintiff's departure, MetLife hired temporary or contract workers who may have performed some of the tasks that had been previously done by Plaintiff. Id. at 34.

With respect to MetLife's decision to delay the termination of Plaintiff's employment for several months and then to time the termination in order to maximize Plaintiff's financial benefits

13

under the 2012 enhanced severance program, Plaintiff notes that she was denied more than a week and half of her leave and her group health benefits and, more fundamentally, that she was not restored to her job. Id. at 40.

It is undisputed that (1) at the time MetLife decided that Plaintiff's position would be eliminated, Plaintiff was pregnant and thus a member of a protected class; (2) her layoff constituted an adverse employment action; and (3) she was performing her job at an acceptable level. The fourth factor under McDonnell is a closer question in this case. There is no persuasive evidence contained in the record that establishes that the Plaintiff was replaced; at most it supports the contention that some of her tasks were taken over by other employees and that others may have been performed by temporary workers. As to the latter, is undisputed that MetLife engaged temporary workers both during Plaintiff's employment as well as after her termination. Plaintiff's contention that she was generally treated differently than non-pregnant employees (who were not laid off) is not supported by the record. One of those employees was the administrative assistant, Diane Lang, who supported several members both in- and outside the Product Marketing group but did not hold a comparable professional position as the Plaintiff. As to the temporary employees (who were not pregnant and not laid off), there is no indication that they were employees of the Product Marketing group; rather, they worked on a

14

temporary basis as needed. Moreover, Gulesserian, an employee of the Product Marketing group who took two separate maternity leaves in relatively quick succession, retained her job and subsequently received a promotion.

In sum, Plaintiff's contention that she was replaced is not supported by credible evidence. As to her suggestion that she was treated differently than non-pregnant employees (who were retained while Plaintiff was laid off) that too seems to call for an inference that is not supported by the record. Assuming, without deciding, that the question is close enough to allow Plaintiff to meet the fourth hurdle, further analysis reveals that Plaintiff nonetheless lacks sufficient facts to overcome MetLife's motion for summary judgment.

It is undisputed that in early 2012, before learning of Plaintiff's pregnancy, Lundgren was tasked by MetLife to reduce the Product Marketing group by 8% or $800,000. In consultation with Delemontex, Lundgren decided to eliminate a Marketing Consultant (male, not pregnant, not on parental leave) and Plaintiff, the sole Marketing Analyst. Although Plaintiff points at Lang and the temporary employees as being less senior, it is undisputed that of the employees in the Product Marketing group, Plaintiff had the least marketing experience and was the most junior employee. Neither Lang nor the temporary employees performed at the same level as the other members of the Product Marketing team. Notably,

Plaintiff does not dispute that "[t]he decision to eliminate her position was made because [she] had less experience in marketing relative to the other members of the Product Marketing group under Mr. Delemontex." SUF ¶ 29, SDF ¶ 29.

None of Plaintiff's suggested inferences support her contention that Lundgren's decision to eliminate her position was based on Plaintiff's pregnancy. As already noted, Lang was not in the same position as Plaintiff, she provided administrative support to various employees and her experience was not in the same category as that of other Product Marketing members. Likewise, the fact that other members of that group took over some of Plaintiff's tasks and that other tasks may have been performed by temporary employees is not proof that MetLife's asserted reason for terminating Plaintiff's employment is a pretext. See Dunn v. Trustees of Brown University, 761 F.3d at 70 (quoting Lewis v. City of Boston, 321 F.3d 207, 216 (1st Cir. 2003)(noting that, in the context of a reduction of force, allocating duties of discharged employees to other existing employees "'does not itself raise a reasonable inference that the employer harbored discriminatory animus toward any one employee.'")

As to Lundgren's decision to delay Plaintiff's layoff, this resulted in her continued employment and health care coverage for an additional four and a half months and throughout the remainder of her pregnancy. Plaintiff also received her paid maternity leave

in full until December 21, 2012, after which her leave was unpaid. Plaintiff's FMLA leave was scheduled to conclude in the first week of January. Only after Lundgren became aware that Plaintiff would receive enhanced severance benefits provided her layoff was scheduled before the end of 2012, did he engage HR to make a determination of when the layoff would be more beneficial to Plaintiff. It is understood that Plaintiff would have most benefitted by continued employment and that her layoff also benefitted MetLife as a part of the budget reduction plan. However, it is undisputed that, after the decision to eliminate her position had been made, Lundgren's decisions first to delay Plaintiff's layoff and then to accelerate it resulted in significant financial benefits to the Plaintiff. Accordingly, Plaintiff's suggestion that Lundgren and/or Delemontex's failure to advise HR about Plaintiff's pregnancy in April 2012 constitutes a cover-up is unsupported by the actual events in this case.

As to Plaintiff's assertion that MetLife discriminated against another female employee in connection with a pregnancy, the record again fails to support such a conclusion. According to Plaintiff, Gulesserian told her that she was offered a demotion before her second FMLA leave (an assertion that Gulesserian denies) but she refused it. Moreover, Gulesserian was promoted between FMLA leaves and received an increase in pay after her second FMLA leave. Given those facts, no reasonable inference can be drawn that MetLife

17

treated pregnant employees with discriminatory animus and Plaintiff's claims cannot withstand MetLife's motion for summary judgment.

**B. Retaliation and FMLA Interference**

Finally, as to Plaintiff's claims of retaliation and interference with her FMLA leave, no lengthy discussion is required. Because of Lundgren's efforts to maximize Plaintiff's benefits after the decision to eliminate her position in the context of a mandated budget reduction had already been made, she retained her job and benefits for an additional four and a half months. She also received all of her fully paid maternity leave and most of her FMLA leave. The decision to accelerate her layoff shortly before her FMLA leave was scheduled to end was made only after Lundgren ascertained that Plaintiff would receive a significant financial benefit by qualifying for an enhanced severance program that was available only through the end of 2012. None of those essential facts are credibly disputed by the Plaintiff and she offers no facts that would allow a reasonable inference that she was retaliated against because she chose to take FMLA leave.

For all these reasons and for those set forth in the March 22, 2017 R&R, the Court concludes that the Plaintiff's objections are insufficient to defeat MetLife's motion for summary judgment. Accordingly, the Court adopts the R&R in its entirety. MetLife's

motion for summary judgment is GRANTED. The Clerk is directed to enter judgment for MetLife.

SO ORDERED.

/s/ Mary M. Lisi
Senior United States District Judge
June 6, 2017